Emil Klempner v. Commissioner. Augusta Klempner v. Commissioner.
Klempner v. Commissioner
Docket Nos. 48491, 48493, 53029, 53030, 53428. 1955-307.
United States Tax Court
T.C. Memo 1955-307; 1955 Tax Ct. Memo LEXIS 30; 14 T.C.M. (CCH) 1185; T.C.M. (RIA) 55307; November 21, 1955
*30 Frank A. Garlove, Esq., Marion E. Taylor Building, Louisville, Ky., Irwin G. Waterman, Esq., and L.C.J. Yeager, C.P.A., for the petitioners. John L. Carey Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in gift tax for 1949, as follows: Docket No.
Deficiency
48491
$1,357.87
48493
33.28
The issue is whether the transfers in 1949 of 1,800 shares of the class B common stock of Klempner Bros, Inc., by the petitioner, Emil Klempner, to his wife and sons were absolute gifts or transfers by him to a trust which he created as settlor. The following findings of fact and opinion are based on the record of the proceedings with respect to Docket Nos. 48491 and 48493. The additional Docket Nos. 53029, 53030, and 53428 are included herein solely by reason of a stipulation of the parties to the effect that the record and the findings of fact and opinion in the present proceedings be considered as such in the proceedings involved in Docket Nos. 53029, 53030, and 53428, and that decisions in such docket numbers be entered accordingly. Findings of Fact Petitioners are husband *31 and wife, residing in Louisville, Kentucky. The gift tax return for the period involved was filed with the collector of internal revenue for the district of Kentucky. The petitioners' family consists of three married sons, Jack, George, and Irving Klempner. A very close family relationship has always existed among the members of the Klempner family. Klempner Bros; Inc., is a Kentucky corporation engaged in the scrap metal business. It originally had a stated capital of $50,000 and all of the stock, except certain qualifying shares, was owned by Emil Klempner. Early in 1948, upon the advice of counsel, the petitioners became interested in estate planning. L.C.J. Yeager, a certified public accountant, was a close family friend and advisor. Yeager, with the advice of petitioners' legal counsel, set up a plan for the estate. The plan involved a recapitalization of Klempner Bros., Inc., hereinafter referred to as the corporation. At the close of its fiscal year the corporation had a surplus of $180,000. As a result of the recapitalization the capital stock was divided into 23,000 shares of common stock, of which 5,000 shares were designated as class A and 18,000 as class B, each *32 having a par value of $10 per share. The entire voting power was vested in the holders of the class A shares; otherwise, the two classes of stock were identical. The primary purpose of the recapitalization was to facilitate distribution of Emil Klempner's estate during his lifetime and at the same time retain control of the corporation. On December 29, 1948, Emil Klempner created an irrevocable trust for the benefit of his wife, Augusta, during her lifetime with the remainder interest vested in petitioners' three sons. If any remainderman predeceased the life beneficiary, without descendants, upon the termination of the trust his one-third share was to be paid equally to the surviving brothers or brother. The Louisville Trust Company was designated as trustee. The trust was to terminate upon the death of the wife or upon the attainment by Irving of the age of 25 years, whichever should occur last. At the time the trust was created Augusta Klempner was 49 and Irving was 18 years of age. The trust instrument contained a provision permitting any person to contribute to the trust corpus. On December 29, 1948, Emil Klempner transferred to the trust 6,600 shares of class B common stock *33 of the corporation and 300 shares of class B common stock to each of his sons, Jack and George. Yeager made out the stock certificates and the appropriate records on the stock book evidencing the issuance and the transfers of the stock certificates. Yeager was present at the offices of the corporation on December 29, 1948, together with Emil Klempner and his sons, Jack and George. At that meeting Yeager, at the direction of Emil Klempner, delivered certificates representing 600 shares of class B stock to each of the sons, which shares were accepted by them. However, the stock transfer book shows that certificates for 300 shares each were issued on December 29, 1948, and that on January 3, 1949, a certificate representing 300 shares of class B stock was issued to each son. After the delivery of the certificates at the meeting of December 29, 1948, Yeager requested that he have a further conference alone with the boys, and Emil Klempner left. Yeager had knowledge that George had been secretly married outside the family's religious faith. He was also aware that Emil Klempner had requested his legal counsel to incorporate in his will and in the trust instrument a provision disinheriting *34 any child marrying outside the faith, and that counsel had persuaded him to omit such a provision. Yeager did not want to make a disclosure of his knowledge of the secret marriage of George and for that reason requested that he be permitted to talk with the sons alone. After the father left the meeting Yeager advised the sons that he knew of instances where stock in close family corporations had gotten into the hands of in-laws who later caused considerable trouble, and he suggested that they give consideration to transferring their shares of class B stock to the trust their father had currently created. The boys took their certificates and left. Later they discussed the matter between themselves and decided to follow Yeager's suggestion. That afternoon they ad0ised Yeager by telephone of their decision to transfer their shares to the trust. The next morning Yeager met them at the office of the corporation and effected the transfers to the trust. Petitioner Emil Klempner began making a series of transfers of class B shares to his wife, Augusta, to his three sons, and to their wives. Immediately upon receipt of the certificates the shares were transferred to the father's trust. The *35 transfers were as follows: Name
Date
Shares
Jack (son)
1/ 3/49
300
George (son)
1/ 3/49
300
Jack
12/21/49
300
George
12/21/49
300
Augusta (wife)
12/21/49
600
Jack
10/30/50
600
George
10/30/50
600
Irving (son)
10/30/50
600
Augusta
10/30/50
1,950
Jack
7/ 3/51
600
George
7/ 3/51
600
Irving
7/ 3/51
600
Janice (daughter-in-law)
7/ 3/51
600
Dorothy (daughter-in-law)
7/ 3/51
600
Barbara (daughter-in-law)
7/ 3/51
600
Augusta
7/ 3/51
350
Jack
2/21/52
300
George
2/21/52
300
Irving
2/21/52
300
Augusta
2/21/52
400
By the transfers of the above shares, together with the prior transfers, Emil Klempner disposed of all of the 18,000 shares of class B stock of the corporation which he received under the plan of recapitalization. Prior and subsequent to the year 1949 petitioners' sons, Jack and George, were engaged with their father in the operation of the corporation. No dividends were paid by the corporation after December 29, 1948, down to the date of the hearing of these proceedings. In 1949 petitioner Emil Klempner made transfers to his wife and his two sons, Jack and George, of a total of 1,800 shares of class *36 B stock of Klempner Bros., Inc. The transfers were unconditional and constituted completed gifts. Opinion LEMIRE, Judge: The sole question presented is whether the 1,800 shares of class B stock of Klempner Bros., Inc., which Emil Klempner transferred to his wife and his sons, Jack and George, in the year 1949 constituted completed gifts. The respondent's position is that the transfers in question were the consummation of a sham and device initiated and carried out by the accountant Yeager, a close family friend and advisor, solely for the purpose of obtaining gift tax benefits, and when viewed in the light of the entire picture that what purport to be gifts to the individual members of petitioner Emil Klempner's family in truth and substance were transfers directly to a trust which he created as settlor. We have no doubt that the various transactions set forth in our findings of fact were conceived and carried out for the primary purpose of minimizing estate and gift taxes, and that petitioners were fully aware that such was the object to be obtained. The courts have repeatedly recognized that there is nothing sinister in arranging one's affairs by means which the law permits *37 so as to keep one's taxes as low as possible. . Where, as here, close family relationships are involved the transactions must be carefully scrutinized to ascertain if the use of pretense or forbidden devices has been employed to give the appearance of reality when, in fact, substance is lacking. The respondent argues that since all of the donees immediately retransferred their shares of class B stock to the father's trust we should find that there was an implicit understanding that the gifts were conditional and qualified. Under the trust instrument the three sons of the petitioners were equal remaindermen. The gifts in 1949 were made only to the sons, Jack and George. Thus by the retransfer to the trust the other son, Irving, would have a one-third interest in the shares. In 1951 certain shares were transferred by Emil Klempner to his daughters-in-law and they were immediately retransferred to the trust in which they had no direct interest. In the light of the provisions of the trust, the immediate retransfer of the shares by all the donees might warrant the inference that the transfers were pursuant to a prior oral agreement *38 and without donative intent. There was no direct evidence of any agreement to retransfer the shares. Petitioner Emil Klempner, his sons, Jack and George, and the accountant Yeager all testified that the transfers in 1949 were absolute and unconditional, and that the retransfers to the trust were voluntary. Their testimony was uncontradicted and the cross-examination developed no material inconsistencies. In view of such positive evidence this record will not support a finding that the petitioners and the donees mutually agreed or tacitly understood that the transfers made in 1949 would not give unfettered and absolute command over the shares. Decisions will be entered for the petitioners.